**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **BRANDON THOMPSON, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Case No.:**_____ |
| **vs.** | ) | |
| | ) | |
| **SHARKNINJA OPERATING, LLC,** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff BRANDON THOMPSON, by and through the undersigned counsel, sets forth his claims against Defendant SHARKNINJA OPERATING, LLC ("SHARKNINJA") in this Complaint for Damages and Jury Trial Demand as follows:

## NATURE OF THE CASE

1. This is a product liability action to remedy the damages caused by latent safety defects present in a BL450 Series Nutri Ninja Blender ("BLENDER" and/or "SHARKNINJA BLENDER"):



2.      The defective condition of the BLENDER, known to SHARKNINJA but unknown to its customers, caused permanent and debilitating injuries to BRANDON THOMPSON.

### 3.      PARTIES

4.      Plaintiff Brandon Thompson is an adult citizen of the State of Louisiana and a resident of Lincoln Parish, Louisiana. By filing this action, Plaintiff avails himself of the jurisdiction and venue of this Court.

5.      Defendant SHARKNINJA designs, manufactures, markets, imports, distributes, and sells a variety of consumer products, including the subject BLENDER.

6.      SharkNinja Operating, LLC is a Delaware limited liability company, with its principal place of business at 89 A Street #100, Needham, Massachusetts, 02494, whose sole member is EP Midco, LLC, a Delaware limited liability company, with its principal place of business in Massachusetts, whose sole member is Global Appliance, LLC, a Delaware limited liability company, with its principal place of business in Massachusetts, whose sole member is Global Appliance UK Holdco Ltd., a corporation organized under the laws of the United Kingdom, with its principal place of business located in United Kingdom.

7.      At all relevant times, SHARKNINJA was actively involved in the design, manufacture, marketing, import, distribution, and sale of the BLENDER. SHARKNINJA labeled the BLENDER as its own under its own "SharkNinja" brand, holds itself out to be the manufacturer of the product, and exercised control over the design, construction, and quality of the BLENDER.

### JURISDICTION & VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because this action is between a citizen of the State of Louisiana and a citizen of the

2

State of Delaware, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Defendant SHARKNINJA. SHARKNINJA has purposefully availed itself of the privilege of conducting business in the State of Louisiana. SHARKNINJA conducts business in Louisiana, in that it causes the consumer products it designs, tests, manufactures, markets, distributes, and/or sells to be marketed, distributed, sold, and used within the State of Louisiana in its stores located in Louisiana. Through its actions, SHARKNINJA has consented to the jurisdiction of this Court and should reasonably anticipate being hailed into a Federal Court situation in Louisiana.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this Judicial District, in Lincoln Parish, Louisiana.

## FACTUAL ALLEGATIONS

11.     The BLENDER essentially has four components: a motor base unit which contains a high-speed motor ("Motor Base"), a plastic cup that comes in both 18 oz or 24 oz ("Nutri Ninja Cup"), the blender blades ("Pro Extractor Blades Assembly"), and a lid for the Nutri Ninja Cup after blending:



12.     SHARKNINJA directs a consumer to place food into the Nutri Ninja Cup ("C" or "D" above), twist on the Pro Extractor Blades Assembly ("A" above) over the Nutri Ninja Cup, then to turn the Cup upside down, and to twist onto the Motor Base ("E" above). The consumer then presses the Nutri Ninja Cup down in pulses against the Motor Base to activate blending.

13.     As a consumer is using the blender consistent with the instructions and warnings provided by Defendant SHARKNINJA, the Nutri Ninja Cup is capable of detaching and flying off the Motor Base. When this occurs, the blades of the Pro Extractor Blades Assembly are still actively rotating and thus a dangerous hazard to the consumer using the BLENDER.

14.     The BLENDER has been manufactured such that consumers cannot safely use them in the intended manner without risk of the BLENDER's active blades becoming exposed, resulting in physical injury or property damage.

15.     By reason of the foregoing acts or omissions, BRANDON THOMPSON and/or his spouse purchased the SHARKNINJA BLENDER with the reasonable expectation that it was

properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

16.    BRANDON THOMPSON used his SHARKNINJA BLENDER for its intended purpose of preparing meals for himself and did so in a manner that was reasonable and foreseeable by SHARKNINJA.

## FACTUAL ALLEGATIONS

17.    On May 16, 2024, BRANDON THOMPSON was using his SHARKNINJA BLENDER to puree fruit.

18.    BRANDON THOMPSON placed the appropriate amount of fruit and liquid into the Nutri Ninja Cup, attached the Pro Extractor Blades Assembly onto the Cup, then secured the Cup into the Motor Base.

19.    BRANDON THOMPSON pressed the Cup down to activate blending.

20.    After a short moment of blending, the Nutri Ninja Cup shot off the Motor Base, leaving the spinning blades exposed. BRANDON THOMPSON's left hand and fingers were catastrophically lacerated by the spinning blades.

21.    Upon information and belief, SHARKNINJA designed, manufactured, purchased, tested, marketed, promoted advertised, sold, distributed, and/or approved of the BLENDER in the State of Louisiana.

22.    But for the unreasonably dangerous design of the BLENDER, BRANDON THOMPSON would not have suffered the injuries he incurred as a result of this incident.

23.    The defective condition of the BLENDER was present in the BLENDER when it left the control of SHARKNINJA.

24.    SHARKNINJA's BLENDER possesses design defects that make it unreasonably dangerous for its intended use by consumers because the Ninja Nutri Cup can explosively detach during blending, leaving the dangerous blades of the Pro Extractor Blades Assembly exposed to the consumer's hand.

25.    Economic, safer alternative designs were available that could have prevented the Ninja Nutri Cup from detaching during blending and could also have prevented the motor from continuing to operate the blades.

26.    Upon information and belief, SHARKNINJA was previously aware of other incidents of the Ninja Nutri Cup from detaching due to the identical design and manufacturing defects in the BLENDER that maimed BRANDON THOMPSON, yet SHARKNINJA failed to recall and remedy the defects in the BLENDER or adequately warn BRANDON THOMPSON of the latent danger caused by those known defects.

27.    As a direct and proximate result of SHARKNINJA's intentional concealment of such defects, its failure to warn consumers of such defects, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, BRANDON THOMPSON used an unreasonably dangerous BLENDER, which resulted in significant and painful bodily injuries.

28.    Consequently, BRANDON THOMPSON seeks compensatory damages resulting from the use of SHARKNINJA's BLENDER, which has caused BRANDON THOMPSON to suffer from serious and permanent bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

**CAUSES OF ACTIONS**

**COUNT 1**
**PURSUANT TO THE LOUISIANA PRODUCTS LIABILITY ACT**
**(LA R.S. § 9:2800.52, *ET SEQ.*)**

29.     Plaintiff incorporates, as if re-alleged, paragraphs 1 through 28 above.

30.     At the time the BLENDER left the control of SHARKNINJA, the BLENDER was defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff, in the following ways:

a.     The BLENDER was unreasonably dangerous in its construction or composition because its safety features deviated in a material way from the manufacturer's specifications or performance standards for the product.

b.     The BLENDER was unreasonably dangerous in its design in that it allowed the Nutri Ninja Cup to detach during blending and expose the activated blades of the Pro Extractor Blades Assembly.

c.     The BLENDER was unreasonably dangerous in its design in that alternative designs were readily available that were capable of preventing Plaintiff's damages.

d.     The BLENDER was unreasonably dangerous in its design in that the likelihood that the BLENDER's design would cause damages and the gravity of said damages outweighed the burden on SHARKNINJA of adopting alternative available designs, and the adverse effect, if any, of such alternative design on the utility of the product.

e.     The BLENDER was unreasonably dangerous in that it left SHARKNINJA's control without any adequate warning that the BLENDER's Nutri Ninja Cup could detach while the Pro Extractor Blades Assembly were engaged, which is in violation of relevant

7

safety standards and certifications. SHARKNINJA failed to use reasonable care to provide adequate warnings of these dangers to the users and handlers of its product.

f.      The BLENDER was unreasonably dangerous in that it failed to conform to an express warranty of SHARKNINJA that, contrary to SHARKNINJA's express representation in its user manual, the BLENDER is dangerous when used as intended and per the manual's instructions. This false representation about the BLENDER's safety induced BRANDON THOMPSON to use the BLENDER, causing his injuries.

31.    After the manufacture of the BLENDER, SHARKNINJA acquired knowledge of these dangerous defects in the BLENDER, including, but not limited to from knowledge of other incidents of the Nutri Ninja Cup detaching during blending, but SHARKNINJA failed to act as reasonably prudent manufacturer and to provide warnings to BRANDON THOMPSON and other consumers, pursuant to La. R.S. § 9:2800.57.

32.    Further, at the time of the making of the respective express warranties, SHARKNINJA knew or should have known of the purpose for which the BLENDER was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purposes. The BLENDER was unreasonably dangerous because it failed to conform to an express warranty of the respective SHARKNINJA BLENDER as provided by La. R.S. § 9:2800.58.

33.    SHARKNINJA's actions and omissions were the direct and proximate result of BRANDON THOMPSON's injuries and damages.

34.    SHARKNINJA, under all applicable laws including, but not limited to, the Louisiana Products Liability Act, La. R.S. 9:2800.52, *et seq.*, is liable unto BRANDON THOMPSON for his injuries and damages for designing, manufacturing, assembling, marketing, distributing, and/or selling the BLENDER that was unreasonably dangerous in its construction or

8

composition, in its design, because inadequate warnings about the product had not been provided, and/or because the BLENDER did not conform to the implied and express warranties of the manufacturer about this product.

### COUNT 2
### PURSUANT TO LOUISIANA'S REHDIBITION LAW
### (LA C.C. ART. 2520, *ET SEQ.*)

35.    Plaintiff incorporates by reference each of the preceding paragraphs 1 – 28 of this Complaint for Damages and Demand for Jury as if fully set forth herein.

36.    SHARKNINJA's subject product, BLENDER, which was utilized by Plaintiff, BRANDON THOMPSON, and caused his injuries and resulting damages contained a vice or defect which effectively rendered it useless or its use so inconvenient or dangerous that buyers would not have purchased it.

37.    SHARKNINJA manufactured, sold, and promoted the BLENDER which SHARKNINJA placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. The subject BLENDER, sold and promoted by SHARKNINJA, possesses a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or are unreasonably dangerous, as described above, which renders the BLENDER useless or so inconvenient that it must be presumed that a buyer would not have bought the subject product had he known of the defect, pursuant to La. C.C. Art. 2520.

38.    SHARKNINJA is liable as a bad faith seller for selling the subject defective product with knowledge of the defects, and thus, is liable to BRANDON THOMPSON for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorneys' fees.

39.    As the manufacturers of the subject BLENDER, under Louisiana law, SHARKNINJA is deemed to know that its subject product, BLENDER, possessed redhibitory defects. La. C.C. art. 2545.

40.    As a result of SHARKNINJA's subject-product's redhibitory defects, BRANDON THOMPSON suffered and incurred damages, including medical expenses and other economic and noneconomic damages, including loss of consortium and other damages as outlined herein.

41.    By reason of the foregoing, BRANDON THOMPSON suffered injuries and damages as alleged herein and incurred attorneys' fees which he is entitled to recover from SHARKNINJA.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief:

42.    That Summons be issued upon SHARKNINJA and that SHARKNINJA be required to answer this Complaint within the time period allotted by law;

43.    That this Court enter an Order, granting Plaintiff a judgment against SHARKNINJA for compensatory damages, together with interest and costs, in an amount to be determined at trial;

44.    That this Court enter an Order, granting Plaintiff a judgment for special and general damages, costs, attorney's fees, expert fees, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and equitable;

45.    That Plaintiff be granted a trial by jury on all issues; and

46.    For such other, further, special, extraordinary and general relief to which Plaintiff is entitled under the circumstances of this cause.

## JURY DEMAND

47.     Plaintiff demands a trial by jury on all issues so triable.

*Respectfully submitted,*

**ROME, ARATA, BAXLEY & STELLY, L.L.C.**

/s/ *Mary Alison Barnes*
**W. CHAD STELLY (#21140)**
**M. ALI BARNES (#38980)**
3636 South I-10 Service Road West
Suite 310
Metairie, LA 70001
Telephone: (504) 522-9980
Facsimile:  (504) 522-9971
E-mail:     *wcstelly@romarata.com*
                *abarnes@romearata.com*

*AND*

**CORY WATSON ATTORNEYS**
**CURT TANNER (to be admitted PHV)**
2131 Magnolia Avenue South
Birmingham, AL 35205
Telephone:    (205) 328-2200
E-mail:         *CTanner@CoryWatson.com*

*Attorneys for Plaintiff BRANDON THOMPSON*

**SUMMONS ISSUED TO:**

SHARKNINJA OPERATING, LLC
*Through Its Registered Agent;*
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801