**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**BRANDON THOMPSON**                      **CASE NO.  3:25-CV-00654**

**VERSUS**                                **JUDGE TERRY A. DOUGHTY**

**SHARKNINJA OPERATING L L C**            **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 25] filed by Defendant, SharkNinja Operating, LLC ("Defendant"). Plaintiff, Brandon Thompson, ("Plaintiff") did not file an opposition.

For the reasons set forth herein, Defendant's Motion is **GRANTED**.

## I.    BACKGROUND

This lawsuit arises from an injury allegedly caused by a blender. Plaintiff claims that he was injured while using a Ninja BL450 blender ("BL450").[1] Plaintiff's wife purchased the BL450 sometime in 2017.[2] Plaintiff alleges that on May 26, 2024, he was blending fruit into puree.[3] He "placed the appropriate amount of fruit and liquid into the Nutri Ninja Cup, attached the Pro Extractor Blades Assembly onto the Cup, then secured the Cup into the Motor Base."[4] "After a short moment of blending, the Nutri Ninja Cup shot off the Motor Base, leaving the spinning blades exposed, and Plaintiff's left hand and fingers were lacerated by the spinning blades."[5]

---

[1] [Doc. No. 1].
[2] [Doc. No. 25-3, p. 4].
[3] [Doc. No. 1, p. 5, ¶ 17].
[4] [Id. at ¶ 18].
[5] [Id. at ¶ 20].

Discovery revealed shifting accounts as to what was being blended at the time of the incident. Immediately following the incident, Plaintiff's medical records assert that "he was 'sipping on some Hennes[s]y' while blending 'cleaner' or attempting to make a 'natural ant killer'—a mixture of lemon, cayenne pepper, and baking soda"—which Plaintiff now denies.[6] His complaint, however, states that he was using the BL450 to puree fruit.[7] Then, nearly two years later, in his January 2026 interrogatory responses[8] and again at his February 2026 deposition,[9] Plaintiff swore under oath that he was blending a smoothie recipe and recited the ingredients. Finally, on the last day of discovery, April 28, 2026, Plaintiff served an amended interrogatory response, shifting positions once again, stating, "Plaintiff does not remember what he placed in the Blender Cup."[10]

Plaintiff asserts that the BL450 was defective in construction, design, and warnings, and failed to conform to an express warranty under the Louisiana Products Liability Act ("LPLA"), alongside a related claim in redhibition.[11] Defendant filed the instant Motion asserting that Plaintiff cannot establish any of the asserted claims as the evidence forecloses each one.[12] Plaintiff failed to respond to the Motion.

The matter is sufficiently briefed, and ripe for ruling.

---

[6] [Doc. No. 25-1, p. 6]; [Doc. No. 25-5, p. 2].
[7] [Doc. No. 1, ¶ 17].
[8] [Doc. No. 25-4, p. 2].
[9] [Doc. No. 25-3, p. 5]; [Id. at p. 7].
[10] [Doc. No. 25-6, p. 1].
[11] [Doc. No. 1].
[12] [Doc. No. 25-1, p. 7].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *In re Genesis Marine, LLC*, 164 F.4th 448, 453 (5th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a dispute about a material fact "is 'genuine' if the evidence is sufficient for a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). Put differently, courts must grant summary judgment against a party who does not—or cannot—show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The movant must first point to "particular parts of materials in the record," such as depositions, documents, electronic information, affidavits, interrogatories, etc., to show there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A). Once the movant does so, the burden shifts to the nonmovant who "must go beyond his pleadings and designate specific facts showing that there is a genuine dispute of material fact for trial." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (citing *Celotex*, 477 U.S. at 324)). The nonmovant cannot "defeat summary judgment with" metaphysical doubts as to the facts, "'conclusory allegations,'"

'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine*, 164 F.4th at 453 (collecting cases).

Finally—and most importantly—when resolving summary judgment motions, "courts may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" and must resolve all ambiguities and draw all permissible inferences "in favor of the non-moving party." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified) (citing *Anderson*, 477 U.S. at 255).

For unopposed summary judgment motions, the Fifth Circuit says more. A "motion for summary judgment cannot be granted simply because" it is unopposed. *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435 (5th Cir. 2014) (per curiam) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). But courts may grant the motion "if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Id.*

Thus, the movant must still establish "that there is no genuine issue of material fact; and, unless that party does so, a court may not grant the motion, regardless [of] whether any response is filed." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012). "Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).

Courts also have no obligation to "sift through the record in search of evidence" that supports the nonmovant's opposition to the motion for summary judgment.

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Finally, while courts "need consider only the cited materials," they may also "consider other materials in the record." FED. R. CIV. P. 56(c)(3).

In this diversity case, Louisiana substantive law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### B.    Louisiana Products Liability

Defendant contends that it has no responsibility under the LPLA for the injuries sustained by Plaintiff.[13] To establish an LPLA claim, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product. La. Rev. Stat. § 9:2800.54(A). "A product is unreasonably dangerous under the LPLA 'if and only if' the product is unreasonably dangerous (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty." *Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 97 (E.D. La. 2021) (citing La. Rev. Stat. § 9:2800.54(B)). Thus, the LPLA limits the plaintiff to four theories of recovery: "construction or composition defect (also known as manufacturing defect), design defect, inadequate warning, and breach of express warranty." *Id.* (citing La. Rev. Stat. § 9:2800.54(B)).

---

[13] [Id.].

Here, Plaintiff alleges all four theories of liability under the LPLA: (1) the BL450 was defective in construction; (2) the BL450 was unreasonably dangerous due to defective design; (3) the BL450 was unreasonably dangerous due to inadequate warnings; and (4) the BL450 was unreasonably dangerous in that it failed to conform to an express warranty.[14]  Defendant, however, argues that Plaintiff fails on all his claims.[15] There is no dispute as to Defendant being the manufacturer of the BL450; therefore, the first element of the LPLA claim is established.

The Court now addresses each argument in turn.

### 1.      Reasonably Anticipated Use

Because "reasonably anticipated use" is a threshold LPLA claim element, the Court addresses it first. Reasonably anticipated uses an objective standard that looks at the standpoint of the manufacturer at the time the product was produced. LPLA defines reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. Rev. Stat. § 9:2800.53(7); *see Fielder v. Graco Children's Products Inc.*, No. 04-1715, 2006 WL 725099, at *3 (W.D. La. Mar. 20, 2006). This requires the Court to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture. *See Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998) (citing *Myers v. American Seating Co.*, 637 So.2d 771, 775 (La. App. 1994); John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 585–86 (1989)).

---

[14] [Doc. No. 1, pp. 5–7].
[15] [Doc. No. 25-1, p. 7].

The Fifth Circuit discussed the breadth of the phrase "reasonably anticipated use" *in Kampen*. The *Kampen* Court defined "reasonably anticipated" at a level of generality that considered the risks the manufacturer must or should have reasonably contemplated when designing the product and providing warnings for its use. 157 F.3d at 309–10. The Court further reasoned that it has consistently defined "use" to include not only the ordinary, intended use of a product, but also some of the plaintiff's negligent conduct. *Id.* at 312. The *Kampen* Court held that the manufacturer is not responsible for every conceivable, foreseeable use of its product, and reasonably anticipated use does not encompass misuses in direct contravention of a warning or where the danger should have been obvious to the experienced as well as the ordinary consumer. *Id.* at 319.

In this case, Plaintiff cannot show his injury arose from a reasonably anticipated use because the factual narrative he swore under oath is scientifically impossible. Plaintiff's medical records after the incident  show that before the incident he was "mixing up some cleaner with lemon juice and baking soda and the container exploded; it blew my finger off."[16] The medical records also reveal that Plaintiff "state[d] he was 'sippin on some hennesey' when this happened."[17] The medical notes then go on to state that Plaintiff "accidentally injured his hand while mixing up a lemon, Cayenne pepper, and baking soda in a blender to try and create a natural ant killer, the blender exploded while holding it in his hand."[18] In Plaintiff's

---

[16] [Doc. No. 25-5, p. 1].
[17] [Id. at p. 2].
[18] [Id.].

initial interrogatory responses and subsequent deposition, however, he insisted he was blending a standard smoothie recipe consisting of half a lemon, grapes, half a banana, beet juice, water, and cayenne pepper.[19]

Testing performed by both Plaintiff's expert, Jeffrey Hyatt ("Hyatt"), and Defendant's expert, Dr. Bryson Brewer ("Dr. Brewer"), conclusively showed that this "standard smoothie recipe" generates zero pressure accumulation and cannot cause the pressurized cup separation described by Plaintiff.[20] According to Dr. Brewer's testing of the varying ingredients that Plaintiff used, the results show that a pressure of at least 20 psig is required to trigger such an ejection.[21] Where a plaintiff's factual account is "at variance with the laws of nature and the physical facts" and conflicts with "the undisputed testimony of the experts," summary judgment is appropriate. *Ralston Purina Co. v. Hobson,* 554 F.2d 725, 729 (5th Cir.1977). Here, no reasonable jury could find that Plaintiff was blending the smoothie ingredients he swore to, as doing so could not have generated the amount of pressure needed to launch the cup.

Moreover, Defendant asserts that Plaintiff's amended interrogatory should be considered a sham.[22] The Court agrees. The Fifth Circuit holds, "[u]nder the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cnty.,* 916 F.3d 464, 472 (5th Cir. 2019). Plaintiff's last-minute amended interrogatory response stating he "does not

---

[19] [Doc. No. 25-4, p. 2]; [Doc. No. 25-3, p. 7].
[20] [Doc. No. 25-7, pp. 14–15]; [Doc. No. 25-8, p. 33].
[21] [Id. at p. 46].
[22] [Doc. No. 25-1, p. 12].

remember" what he placed in the blender does not create a genuine issue of material fact.[23] A party cannot defeat summary judgment by offering later statements that are completely inconsistent with clear, prior sworn testimony without explanation, or by asserting a subsequent lack of memory to erase previously established facts.

Furthermore, even if the Court accepted that Plaintiff does not remember, a total absence of knowledge means Plaintiff cannot affirmatively prove that his use was "reasonably anticipated" under the LPLA. Finally, Plaintiff explicitly denied— under oath—blending alternative materials mentioned in his medical records (such as "cleaner" or a baking soda/lemon juice "natural ant killer"), which *are* capable of generating the required amount of pressure. Based on the testing done by Hyatt and Dr. Brewer, the only materials that caused explosions like the one Plaintiff alleges resulted from mixing the ingredients for cleaner or ant killer, which he mentioned in his medical records.[24] Because any conclusion as to what Plaintiff was actually blending would rely on pure speculation, Plaintiff cannot meet his threshold burden that he was injured from a reasonably anticipated use of the BL450.

### 2.    Unreasonably Dangerous Characteristic

### a.    Manufacturing Defect

Although Plaintiff cannot establish his threshold burden, the Court shall go through the alleged defects for a thorough analysis. Plaintiff asserts that "the BL450 was unreasonably dangerous in its construction or composition because its safety features deviated in a material way from the manufacturer's specifications or

---

[23] [Doc. No. 25-6, p. 1].
[24] [Doc. No. 25-7, pp. 14–15]; [Doc. No. 25-8, pp. 34–42].

performance standards for the product."[25] To establish a manufacturing-defect claim, a plaintiff must show that "at the time the product left [the] manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. § 9:2800.55. "This is a narrow and demanding test" because the plaintiff must show "that the *particular* product used by the plaintiff deviated from its intended design." *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187, 1197–98 (E.D. La., 2016).

In other words, a plaintiff must show "what a manufacturer's specifications or performance standards are for a particular product" and "how the product [that he used] materially deviated from those standards so as to render it unreasonably dangerous." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (citation omitted). "A [plaintiff] must also show that the alleged defect was the cause-in-fact of his injury, as well as the 'most probable cause.'" *Rhodes*, 2019 WL 2162845, at *3 (quoting *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994)).

Defendant asserts that Plaintiff cannot prove a manufacturing-defect claim becausePlaintiff "failed to identify any design specifications, engineering drawings, or production standards for the Ninja BL450 blender, nor has he provided evidence that his specific unit deviated from identical units."[26] Defendant goes further and

---

[25] [Doc. No. 1, p. 7].
[26] [Doc. No. 25-1, p. 9].

states that Plaintiff's own liability expert, Hyatt, does not opine on a manufacturing defect.[27]

Hyatt's Rule 26 Report attacks the BL450's design and warnings but does not address a deviation from design.[28] Conversely, Defendant's expert, Dr. Brewer, affirmatively concluded after physically inspecting the BL450 that its components showed no manufacturing flaws, that its blades and motor rotated freely, and that there was no evidence of a manufacturing defect contributing to the incident.[29] Thus, a reasonable jury will not be able to determine that Plaintiff's injuries were more probable than not caused by a manufacturing defect in the BL450. So, Defendant's Motion for Summary Judgment as to the manufacturing defect claim is **GRANTED**.

### b.    Design-Defect Claim

A product is defective in design if, at the time the product left its manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the plaintiff's damage; and (2) the likelihood that the product's design would cause the plaintiff's damage and the gravity of the damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. *Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605, 612 (5th Cir. 2014) (quoting La. Rev. Stat. § 9:2800.56). "The occurrence of an injury does not give rise to the presumption that the design was unreasonably dangerous." *Rivers v. Remington*

---

[27] [Id.].
[28] [Id.]; [Doc. No. 25-7].
[29] [Doc. No. 25-8, p. 3].

*Arms Co.*, No. 17-17124, 2018 WL 746392, at *4 (E.D. La. Feb. 7, 2018) (quoting *Robertson v. AstraZeneca Pharms., LP*, No. 15-438, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015)).

The first element requires that the claimant prove that the alternative design was at least conceived at the time the product left the manufacturer's control "because one of the purposes of the first element 2800.56 is to show the manufacturer has a realistic choice as to design." *Kennedy, supra*, at 596.

The second element, often referred to as the risk-utility analysis, usually requires a plaintiff to present evidence "concerning the extent of the risk of that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed alternative design." *Scordill v. Louisville Ladder Group*, LLC, 02- 2565, 2003 WL 22427981, at *10 (E.D. La. Oct. 24, 2003); *see also Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. App. 2004) (finding no "valid alternative design presented" when the plaintiff's expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation"). However, such a high degree of specificity may be unnecessary when "the product or design feature in question is relatively uncomplicated and must be such that a layman could readily grasp them." *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 n.4 (5th Cir. 2000) (citations omitted).

### i.    Alternative Design

Plaintiff has failed to satisfy his burden regarding a safer alternative design. To survive summary judgment, a plaintiff must produce specific evidence showing

that a proposed alternative applies to the product, analyze the cost of implementation, evaluate its impact on product utility, and measure the extent to which it reduces the frequency or severity of the harm. *Id.* at 551.

Here, the Court has established that the threshold burden has not been met, but even if it had been, Plaintiff's claim still fails. Plaintiff's expert lays out two design defect theories. Defendant refers to the two theories as the "Unscrewing Theory" and the "Pressurized Cup Separation Theory."[30] "Under the Unscrewing Theory, Hyatt opines that the BL450's motor rotates in a direction that can cause the blender cup to 'unscrew during use.'"[31] "Under the Pressurized Cup Separation Theory, Hyatt opines that the cup can pressurize and separate from the blade assembly 'resulting in the cup flying off [and] leaving the blades exposed.'"[32]

Defendant addresses both defect theories. Under the Unscrewing Theory, Defendant emphasizes that "Hyatt offers no opinion on how likely such an unscrewing event is during ordinary blending, what operating conditions produce one, or how frequently the BL450 has experienced one in the field."[33] "The Unscrewing Theory simply asserts (without evidence) that the failure mode is possible—not that it is likely."[34] The Court agrees. Plaintiff produced no data or evidence to show that such theories are actual design defects. Consequently, that theory fails.

---

[30] [Doc. No. 25-1, p. 10].
[31] [Id.]; [Doc. No. 25-7, p. 23].
[32] [Id. at p. 17].
[33] [Doc. No. 25-1, p. 15].
[34] [Id.].

Defendant additionally argues that the Pressurized Cup Separation Theory fails for the same reason.[35] Again, there is no data on how likely such a pressurized separation is during ordinary use, what causes it, or how often such incidents occur. Instead, Hyatt concedes that the "one possible cause of the blender cup separation is the use of a baking soda/lemon juice combination."[36] Since the tests by Hyatt and Dr. Brewer confirm that the only time such separation happened was when the BL450 blended the ingredients for cleaner or ant killer, this seems to be the conclusion as to the cause of injury. Therefore, the Court finds that these theories are just that: theories.

While Hyatt identifies two alternative designs: a remote push-button switch with a locking lug system and a reversal of the motor's rotation, he stops at generalities.[37] He references competitor products but does not explain how these designs would work if integrated into the BL450's design. Furthermore, Hyatt's report is completely silent on the manufacturing costs or retooling burdens these changes would impose on Defendant, and he performs no utility analysis to see if these changes would degrade blender performance. Hyatt only provides bare assertions. Therefore, Plaintiff has not established an alternative design element for his design defect under the LPLA.

---

[35] [Id.].
[36] [Doc. No. 25-7, p. 16].
[37] [Id. pp. 19–21].

### ii.       Likelihood and Gravity of Alleged Harm

Addressing the second element of the design defect claim, Plaintiff's claim still fails. Defendant argues that even if Plaintiff could establish reasonably anticipated use (the Court found he cannot), his "claim fails because he offers no evidence of "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage[.]"[38] Hyatt, in his Rule 26 Report, asserts "SharkNinja has produced documents of other reports of laceration injuries caused by a separation of the cup from the blade holder in BL450 units, including other lawsuits. According to SharkNinja, these reported incidents are similar to this incident where, "while actively blending, the blender cup 'shot off' or otherwise forcefully ejected from the blender base," and "the user was lacerated by the spinning blades."[39]

These allegations are not supplemented with evidence. The Court finds Hyatt's statements to be conclusory, speculative, hearsay, and unsupported by any documentation. The nonmovant cannot "defeat summary judgment with" mere "'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine, LLC*, 164 F.4th at 453. Because Hyatt's statements are entirely unsubstantiated, the Court will disregard them.

The Court finds that Plaintiff has not sufficiently identified evidence in the record concerning the extent of the risk the alternative designs would have avoided and Defendant's financial burden of switching to the alternative designs. Here, Plaintiff offers no evidence on proximate cause, which would require him to establish

---

[38] [Doc. No. 25-1, p. 14].
[39] [Doc. No. 25-7, p. 18].

"with reasonable certainty that all other alternatives are impossible." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n.5 (5th Cir. 2002) (citation omitted); *see also Haskins Trucking, Inc.*, 2008 WL 1775272, at \*6 (dismissing a design defect claim where the plaintiff failed to account for other potential causes of the product failure). Hyatt's Rule 26 Report is silent on whether the failure to adopt the alternative design is more likely to have caused Plaintiff's injury than other potential causes of injury, such as what he was blending. Because Plaintiff did not conduct a proper risk-utility analysis and because he fails to introduce any evidence on causation, Defendant's Motion for Summary Judgment with respect to the design defect claim is **GRANTED**.

### c. Inadequate Warnings

Defendant asserts that Plaintiff has not specified an inadequate warning or proposed an alternative warning.[40] "A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage, and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Rev. Stat. § 9:2800.57(A). An "[a]dequate warning" is one "that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." *Reynolds v. Bordelon*, 172 So. 3d 607, 614 (La. 2015).

---

[40] [Doc. No. 25-1, p. 21].

When assessing whether the failure to warn proximately caused the plaintiff's injury, "a mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment. *Broussard v. Procter & Gamble Co.*, 463 F. Supp. 2d 596, 609–10 (W.D. La. 2006), *aff'd*, 517 F.3d 767 (5th Cir. 2008). A plaintiff must offer some evidence of the warning that should have been given and how such a warning would have prevented the injury. *Id.* Finally, in cases in which evidence shows the plaintiff failed to read or heed the already-available instructions, causation will be difficult, if not impossible, to establish.

Plaintiff's warning claim fails on multiple grounds. First, Plaintiff cannot prove proximate cause. Plaintiff admitted under oath in his deposition that he has *never seen and never read* the Owner's Guide that accompanied the BL450.[41] An alleged inadequacy in an instruction manual cannot proximately cause an injury if the user never read or reviewed the manual prior to the incident. *McFarlin v. New Hampshire Ins. Co.,* No. 12-3033, 2016 WL 3645200, at *7 (W.D. La. June 30, 2016).

Second, Plaintiff did not specify what warning was inadequate, did not provide a proposed adequate warning, and did not provide any evidence to support his claim. In fact, Plaintiff even testified during his deposition that not only did he not read the owner's guide, but that he believes he and his wife lost it when they moved.[42] Because no warning was read before using the product for the last seven years and even before this incident, the warning could not have been the cause of the injury suffered by the

---

[41] [Doc. No. 25-3, p. 5].
[42] [Id. at p. 5].

use of the BL450. Therefore, Defendant's Motion for Summary Judgment with respect to the inadequate warnings claim is **GRANTED**.

### d.    Express Warranty

Rule 56(f) provides that "after giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on the grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f).  Defendant has not addressed the breach of express warranty claim alleged in Plaintiff's complaint. Accordingly, Plaintiff is hereby given notice of the Court's intention to grant summary judgment in favor of Defendant on his breach of expressed warranty claim. Any objection shall be filed within ten days of entry of this opinion, and shall state the reasons why summary judgment on this claim would not be proper.

### 3.    Redhibition

Plaintiff also asserts a claim in redhibition. In a suit for redhibition, a plaintiff must show: (1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known or apparent to him; and (3) that the seller was given the opportunity to repair the defect. *Alston v. Fleetwood Motor Homes of Indiana, Inc.*, 480 F.3d 695, 699 (5th Cir. 2007) (quoting *Dalme v. Blockers Mfd. Homes, Inc.*,

779 So. 2d 1014, 1028 (La. App. 2001)). Defendant argues Plaintiff has failed to meet this burden, specifically as to the first element.[43]

It is undisputed that Plaintiff's wife purchased the sometime around 2017.[44] Defendant contends Plaintiff has had this BL450 for approximately seven years and used it without incident before the May 16, 2024, incident at a rate of roughly twice a month.[45] Defendant further clarifies that "[p]laintiff himself personally used the blender 'four or five times' before the incident without issue."[46] As Defendant points out, the BL450 had been used possibly over 100 times between purchase and the incident.[47] An extensive product use over a multi-year period forecloses any legal assertion that a product is "absolutely useless for its intended purpose." *Cornwell v. Extreme Tactical Components, LLC*, No. 24-926, 2026 WL 161047, at *9 (E.D. La. Jan. 21, 2026). Therefore, Plaintiff cannot now claim that the BL450 was absolutely useless for its intended purpose or that he would not have purchased this BL450 had he known of the defect. Especially considering he is not the one who bought the BL450 to begin with. Additionally, Plaintiff has presented no evidence that the alleged defect existed at the time of purchase or that Defendant was given an opportunity to repair the item. Therefore, Defendant's Motion for Summary Judgment with respect to the redhibition claim is **GRANTED**.

---

[43] [Doc. No. 25-1, p. 23].
[44] [Doc. No. 25-3, p. 4].
[45] [Doc. No. 25-1, p. 23].
[46] [Id.].
[47] [Id.].

Given that Plaintiff has not opposed the Motion for Summary Judgment, and the evidence submitted by Defendant established that there is no genuine issue of material fact under either the LPLA claims or the redhibition claim, Defendant has met its burden on demonstrating that it is entitled to judgment as a matter of law.

### III.  CONCLUSION

For the reasons stated above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant, SharkNinja Operating LLC's ("Defendant") Motion for Summary Judgment [Doc. No. 25] is **GRANTED**. Plaintiff Brandon Thompson's claims are **DISMISSED WITH PREJUDICE** except for the breach of express warranty claim which was not addressed in Defendant's Motion.

**IT IS FURTHER ORDERED** that Plaintiff shall have ten (10) days from the date of this opinion to file an objection to the express warranty claim.

MONROE, LOUISIANA, this 23rd day of July 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE